UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

_____

KEVIN DWAYNE THERIOT,

        Plaintiff,

v.

UNKNOWN HUHTA et al.,

        Defendants.

Case No. 2:19-cv-17

Honorable Paul L. Maloney

_____/

**OPINION DENYING LEAVE
TO PROCEED *IN FORMA PAUPERIS* - THREE STRIKES**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983, one of 13 such cases filed by Plaintiff on January 25, 2019. Plaintiff seeks leave to proceed *in forma pauperis*. Because Plaintiff has filed at least three lawsuits that were dismissed as frivolous, malicious or for failure to state a claim, he is barred from proceeding *in forma pauperis* under 28 U.S.C. § 1915(g). The Court will order Plaintiff to pay the $400.00 civil action filing fee applicable to those not permitted to proceed *in forma pauperis*. This fee must be paid within twenty-eight (28) days of this opinion and accompanying order. If Plaintiff fails to pay the fee, the Court will order that this case be dismissed without prejudice. Even if the case is dismissed, Plaintiff must pay the $400.00 filing fee in accordance with *In re Alea*, 286 F.3d 378, 380-81 (6th Cir. 2002).

**Discussion**

The Prison Litigation Reform Act (PLRA), Pub. L. No. 104-134, 110 Stat. 1321 (1996), which was enacted on April 26, 1996, amended the procedural rules governing a prisoner's request for the privilege of proceeding *in forma pauperis*. As the Sixth Circuit has stated, the PLRA was "aimed at the skyrocketing numbers of claims filed by prisoners–many of which are

meritless–and the corresponding burden those filings have placed on the federal courts." *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997). For that reason, Congress created economic incentives to prompt a prisoner to "stop and think" before filing a complaint. *Id.* For example, a prisoner is liable for the civil action filing fee, and if the prisoner qualifies to proceed *in forma pauperis*, the prisoner may pay the fee through partial payments as outlined in 28 U.S.C. § 1915(b). The constitutionality of the fee requirements of the PLRA has been upheld by the Sixth Circuit. *Id.* at 1288.

In addition, another provision reinforces the "stop and think" aspect of the PLRA by preventing a prisoner from proceeding *in forma pauperis* when the prisoner repeatedly files meritless lawsuits. Known as the "three-strikes" rule, the provision states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under [the section governing proceedings *in forma pauperis*] if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g). The statutory restriction "[i]n no event," found in § 1915(g), is express and unequivocal. The statute does allow an exception for a prisoner who is "under imminent danger of serious physical injury." The Sixth Circuit has upheld the constitutionality of the three-strikes rule against arguments that it violates equal protection, the right of access to the courts, and due process, and that it constitutes a bill of attainder and is *ex post facto* legislation. *Wilson v. Yaklich*, 148 F.3d 596, 604-06 (6th Cir. 1998).

Plaintiff has been an active litigant in the federal courts in Michigan. In more than three of Plaintiff's lawsuits, the Court entered dismissals on the grounds that the cases were frivolous, malicious, and/or failed to state a claim. *See Theriot v. Woods et al.*, No. 2:18-cv-193 (W.D. Mich. Nov. 30, 2018); *Theriot v. Hill et al.*, No. 2:18-cv-131 (W.D. Mich. Nov. 7, 2018);

*Theriot v. Bates, et al.*, No. 2:12-cv-200 (W.D. Mich. June 29, 2012); *Theriot v. Malhowski, et al.*, No. 2:09-cv-154 (W.D. Mich. Aug. 7, 2009); *Theriot v. Woods, et al.*, No. 2:08-cv-300 (W.D. Mich. Feb. 26, 2009). In addition, Plaintiff was denied leave to proceed *in forma pauperis* pursuant to § 1915(g) in numerous cases. *Theriot v. Cummings et al.*, No. 2:18-cv-192 (W.D. Mich. Dec. 12, 2018); *Theriot v. Lesatz et al.*, No. 2:18-cv-191 (W.D. Mich. Dec. 12, 2018); *Theriot v. Antilla et al.*, No. 2:18-cv-190 (W.D. Mich. Nov. 7, 2018); *Theriot v. Lesatz et al.*, No. 2:18-cv-189 (W.D. Mich. Nov. 16, 2018); *Theriot v. Parrish et al.*, No. 2:18-cv-188 (W.D. Mich. Nov. 15, 2018); *Theriot v. Mukka et al.*, No. 2:18-cv-187 (W.D. Mich. Nov. 29, 2018); *Theriot v. Lancott et al.*, No. 2:18-cv-165 (W.D. Mich. Nov. 2, 2018); *Theriot v. Taho et al.*, No. 2:18-cv-164 (W.D. Mich. Nov. 1, 2018); *Theriot v. Waltenen et al.*, No. 2:18-cv-163 (W.D. Mich. Oct. 17, 2018); *Theriot v. Van Acker et al.*, No. 2:18-cv-162 (W.D. Mich. Nov. 2, 2018); *Theriot v. Mahi et al.*, No. 2:18-cv-161 (W.D. Mich. Nov. 2, 2018); *Theriot v. Larson et al.*, No. 2:18-cv-160 (W.D. Mich. Oct. 18, 2018); *Theriot v. Tervo et al.*, No. 2:18-cv-130 (W.D. Mich. Oct. 16, 2018); *Theriot v. Hill et al.*, No. 2:18-cv-129 (W.D. Mich. Oct. 17, 2018); *Theriot v. Waltenen et al.*, No. 2:18-cv-95 (W.D. Mich. Oct. 17, 2018); *Theriot v. Heinonen et al.*, No. 2:18-cv-94 (W.D. Mich. Oct. 17, 2018); *Theriot v. Jovial et al.*, No. 2:18-cv-93 (W.D. Mich. July 5, 2018); *Theriot v. Tongreva et al.*, No. 2:18-cv-72 (W.D. Mich. July 12, 2018); *Theriot v. Cordonado et al.*, No. 2:18-cv-71 (W.D. Mich. July 5, 2018); *Theriot v. Woods et al.*, Case No. 2:16-cv-234 (W.D. Mich. Jan. 25, 2017); *Theriot v. Massgolia et al.*, No. 2:14-cv-203 (W.D. Mich. Jan. 27, 2015).

In his one-paragraph complaint in this case, Plaintiff makes a conclusory allegation that he is in imminent danger. The Sixth Circuit set forth the following general requirements for a claim of imminent danger:

> In order to allege sufficiently imminent danger, we have held that "the threat or prison condition must be real and proximate and the danger of serious physical

3

injury must exist at the time the complaint is filed." *Rittner v. Kinder*, 290 F. App'x 796, 797 (6th Cir. 2008) (internal quotation marks omitted). "Thus a prisoner's assertion that he or she faced danger in the past is insufficient to invoke the exception." *Id*. at 797–98; *see also* [*Taylor v. First Med. Mgmt.*, 508 F. App'x 488, 492 (6th Cir. 2012)] ("Allegations of past dangers are insufficient to invoke the exception."); *Percival v. Gerth*, 443 F. App'x 944, 946 (6th Cir. 2011) ("Assertions of past danger will not satisfy the 'imminent danger' exception."); *cf*. [*Pointer v. Wilkinson*, 502 F.3d 369, 371 n.1 (6th Cir. 2007)] (implying that past danger is insufficient for the imminent-danger exception).

In addition to a temporal requirement, we have explained that the allegations must be sufficient to allow a court to draw reasonable inferences that the danger exists. To that end, "district courts may deny a prisoner leave to proceed pursuant to § 1915(g) when the prisoner's claims of imminent danger are conclusory or ridiculous, or are clearly baseless (i.e. are fantastic or delusional and rise to the level of irrational or wholly incredible)." *Rittner*, 290 F. App'x at 798 (internal quotation marks and citations omitted); *see also Taylor*, 508 F. App'x at 492 ("Allegations that are conclusory, ridiculous, or clearly baseless are also insufficient for purposes of the imminent-danger exception.").

*Vandiver v. Prison Health Services, Inc.*, 727 F.3d 580, 585 (6th Cir. 2013). A prisoner's claim of imminent danger is subject to the same notice pleading requirement as that which applies to prisoner complaints. *Id*. Consequently, a prisoner must allege facts in the complaint from which the Court could reasonably conclude that the prisoner was under an existing danger at the time he filed his complaint, but the prisoner need not affirmatively prove those allegations. *Id.*

Prior to May 2018, Plaintiff filed only eight lawsuits over a period of ten years. Since May 2018, however, he has filed 45 additional actions in this district. He filed three cases on May 22, 2018. *See Theriot v. Tonequa et al.*, No. 2:18-cv-72; *Theriot v. Cordonado et al.*, 2:18-cv-71; *Theriot v. Lee et al.*, No. 2:18-cv-70. He filed four more actions on June 25-26, 2018. *See Theriot v. Waltenen et al.*, No. 2:18-cv-95; *Theriot v. Heinonen et al.*, No. 2:18-cv-94; *Theriot v. Jovial et al.*, No. 2:18-cv-93; *Theriot v. Woods et al.*, No. 2:18-cv-92. On August 3, 2018, Plaintiff filed three more cases. *See Theriot v. Hill et al.*, No. 2:18-cv-131; *Theriot v. Tervo et al.*, No. 2:18-cv-130; *Theriot v. Hill et al.*, No. 2:18-cv-129. Plaintiff filed another eight cases on September 25, 2018. *See Theriot v. Pollard et al.*, No. 2:18-cv-167; *Theriot v. Lautentres et al.*, No. 2:18-cv-

166; *Theriot v. Lancott et al.*, No. 2:18-cv-165; *Theriot v. Taho et al.*, No. 2:18-cv-164; *Theriot v. Waltenen et al.*, No. 2:18-cv-163; *Theriot v. Van Acker et al.*, No. 2:18-cv-162; *Theriot v. Maki et al.*, No. 2:18-cv-161; *Theriot v. Larson et al.*, No. 2:18-cv-160. Only a month later, on October 29, 2018, Plaintiff filed seven additional lawsuits. *See Theriot v. Woods et al.*, No. 2:18-cv-193; *Theriot v. Cummings et al.*, No. 2:18-cv-192; *Theriot v. Lesatz et al.*, No. 2:18-cv-191; *Theriot v. Antilla et al.*, No. 2:18-cv-190; *Theriot v. Lesatz et al.*, No. 2:18-cv-189; *Theriot v. Parrish et al.*, No. 2:18-cv-188; *Theriot v. Mukka et al.*, No. 2:18-cv-187. On January 25, 2019, Plaintiff filed 13 more actions. *See Theriot v. Beauchamp et al.*, No. 2:19-cv-28; *Theriot v. Huhta et al.*, No. 2:19-cv-27; *Theriot v. Pertu et al.*, No. 2:19-cv-26; *Theriot v. Niemi et al.*, No. 2:19-cv-25; *Theriot v. Lesatz et al.*, No. 2:19-cv-24; *Theriot v. Huhta et al.*, No. 2:19-cv-21; *Theriot v. Marshall et al.*, No. 2:19-cv-20; *Theriot v. Lesatz*, No. 2:19-cv-19; *Theriot v. Huhta et al.*, No. 2:19-cv-18; *Theriot v. Huhta et al.*, No. 2:19-cv-17; *Theriot v. Hill et al.*, No. 2:19-cv-16; *Theriot v. Lesatz et al.*, No. 2:19-cv-15; *Theriot v. Lesatz et al.*, No. 2:19-cv-14. Most recently, on February 27, 2019, Plaintiff file seven more actions. *Theriot v. Mayo et al.*, No. 2:19-cv-59; *Theriot v. Hoffman et al.*, No. 2:19-cv-58; *Theriot v. Lesatz et al.*, No. 2:19-cv-57; *Theriot v. Kirchoffer et al.*, No. 2:19-cv-56; *Theriot v. Lesatz et al.*, No. 2:19-cv-55; *Theriot v. Lesatz et al.*, No. 2:19-cv-54; *Theriot v. Marshall et al.*, No. 2:19-cv-53.

Over the course of these 45 recent § 1983 complaints, Plaintiff's allegations have evolved in an attempt to push the claims forward by incorporating the lessons Plaintiff has learned about obtaining pauper status under the imminent-danger exception to the three-strikes rule of 28 U.S.C. § 1915(g). Prior to his most recent flurries of complaints, Plaintiff was denied leave to proceed *in forma pauperis* in all but the following five cases: *Theriot v. Woods et al.*, No. 2:18-cv-193 (pauper status granted, but case dismissed as frivolous and duplicative); *Theriot v. Hill et

5

*al.*, No. 2:18-cv-131 (granted pauper status, but dismissed for failure to state a claim); *Theriot v. Lesatz et al.*, No. 2:18-cv-101 (pauper status granted; all defendants but one dismissed on grounds of immunity and failure to state a claim); *Theriot v. Woods et al.*, No. 2:18-cv-92 (pauper status initially denied but granted on reconsideration; most defendants and claims dismissed for failure to state a claim; remainder still pending); *Theriot v. Lee et al.*, No. 2:18-cv-70 (pauper status granted and case served). The Court regularly concluded that Plaintiff had failed to allege facts showing that he was in imminent danger of serious physical injury.

Following these denials of pauper status in the May through October cases, Plaintiff initiated new strategies. In *Theriot v. Lee et al.*, No. 2:18-cv-70, a case in which he was allowed to proceed *in forma pauperis*, Plaintiff filed a motion to consolidate into that action 23 of his dismissed lawsuits and 13 new lawsuits that he intended to file. The Court denied his motion on February 13, 2019. Similarly, in *Theriot v. Woods et al.*, No. 2:18-cv-92, another case in which he was permitted to proceed *in forma pauperis*, Plaintiff filed a motion to supplement, in which he again attempted to consolidate 22 previously dismissed cases into his surviving action.

In addition, Plaintiff has attempted to resurrect his many dismissed claims by filing omnibus complaints, in which he reasserts allegations from numerous prior dismissed complaints, coupled with a set of new allegations. *See Theriot v. Woods et al.*, No. 2:18-cv-193 (raising claims from January 2013 to July 2018, many of which had previously been decided against him); *Theriot v. Woods et al.*, No. 2:18-cv-92 (collecting claims between January 2013 and June 2018, most of which were previously dismissed).

As a third strategy, Plaintiff recently has filed motions for relief from judgment in 17 cases that were dismissed after he was denied pauper status for failure to pay the full filing fee. *Theriot v. Cummings et al.*, No. 2:18-cv-192; *Theriot v. Parrish et al.*, No. 2:18-cv-188; *Theriot v.*

6

*Mukka et al.*, No. 2:18-cv-187; *Theriot v. Lautentres et al.*, No. 2:18-cv-166; *Theriot v. Lancott et al.*, No. 2:18-cv-165; *Theriot v. Taho et al.*, No. 2:18-cv-164; *Theriot v. Waltenen et al.*, No. 2:18-cv-163; *Theriot v. Van Acker et al.*, No. 2:18-cv-162; *Theriot v. Maki et al.*, No. 2:18-cv-161; *Theriot v. Larson et al.*, No. 2:18-cv-160; *Theriot v. Tervo et al.*, 2:18-cv-130; *Theriot v. Hill et al.*, No. 2:18-cv-129; *Theriot v. Waltenen et al.*, No. 2:18-cv-95; *Theriot v Heinonen et al.*, No. 2:18-cv-94; *Theriot v. Jovial et al.*, No. 2:18-cv-93; *Theriot v. Tonequa et al.*, No. 2:18-cv-72; *Theriot v. Cordonado et al.*, No. 2:18-cv-71. In each of those 17 motions, Plaintiff attempted to convert his previously dismissed complaints about past incidents into claims of ongoing and immediate danger that would surmount the three-strikes hurdle of § 1915(g). The motions, however, consist of the same single-paragraph, conclusory statement that he is in imminent danger.

In Plaintiff's 18 actions filed between May 22, 2018, and August 3, 2018, Plaintiff complained in three cases that, on a given day, a group of officers lured Plaintiff out of his cell and either beat him, raped him (with or without an instrument), or threatened him. Such incidents purportedly occurred in the hallway, the prisoner counselor's office, or the healthcare room, after which the perpetrators would return Plaintiff to his cell. *See, e.g., Theriot v. Lee et al.*, No. 2:18-cv-70 (alleging that eight officers tricked him into leaving his cell, took him to the prisoner counselor's office, and demanded oral sex; when he refused, they beat him until he manually stimulated each of them); *Theriot v. Cordonado*, No. 2:18-cv-71 (six officers escorted Plaintiff to the healthcare room, where they jumped on him until he lost consciousness); *Theriot v. Waltenen et al.*, No. 2:18-cv-95 (alleging that five officers tricked him into leaving his cell, stopped him in the hall, and then took turns hitting him). Although such allegations were concerning, each complaint alleged only a discrete incident of past harm that did not suffice to establish an imminent danger.

7

Beginning with his September 25, 2018, lawsuits and through his October 29, 2018, lawsuits, Plaintiff alleged that the beatings and sodomy by large groups of officers became more frequent. In addition, his allegations became increasingly unbelievable, including allegations that the wardens and deputy wardens regularly participated and organized groups from other prisons to come to the Baraga Correctional Facility (AMF) for the purpose of assaulting and raping Plaintiff. *See Theriot v. Cummings et al.*, No. 2:18-cv-192 (alleging that Defendant Cummings organized a tour of a large number of former AMF officers, who took Plaintiff to healthcare and took turns raping him); *Theriot v. Lesatz et al.*, No. 2:18-cv-191 (alleging that Warden Lesatz put together a group of 16 of Plaintiff's enemies from the Saginaw County Correctional Facility, who, after removing Plaintiff from his cell, took turns punching Plaintiff in the face); *Theriot v. Lesatz*, No. 2:18-cv-189 (alleging that Warden Lesatz invited a tour of 11 staff members from the Chippewa Correctional Facility (including the Chippewa warden) to take turns pounding Plaintiff in the face); *Theriot v. Parrish et al.*, No. 2:18-cv-188 (alleging that four officers went to Plaintiff's cell and beat him); *Theriot v. Mukka et al.*, No. 2:18-cv-187 (alleging that five officers took him to health care and serially raped him); *Theriot v. Pollard et al.*, No. 2:18-cv-167 (alleging that six officers came to his cell while he was sleeping and beat and stomped him); *Theriot v. Lautentres et al.*, No. 2:18-cv-166 (alleging that three officers came to his cell while he was sleeping, pulled his pants down, and stuck the handle of a plunger up his anus); *Theriot v. Lancott et al.*, No. 2:18-cv-165 (alleging that ten officers coerced him to leave his cell and then serially sodomized him with a broomstick); *Theriot v. Maki et al.*, No. 2:18-cv-161 (alleging that two officers tricked him into going to healthcare, where three additional officers waited, shot him with a rubber-ball gun, pepper-sprayed him, stripped him naked, and then masturbated over him and threatened him for five hours). In all, in 9 of the 15 cases Plaintiff filed in September and October 2018, Plaintiff

alleged that varying groups among 45 named and 25 unidentified officers participated in the rape and torture of Plaintiff.

In his January 2019 filing of 13 cases, Plaintiff alleges that instances of assault or sodomy by multiple officials have become more frequent, alleging such claims in 12 of the 13 cases. In the thirteenth case Plaintiff alleges that Warden Lesatz incited a group of prisoners to attack Plaintiff.

In *Theriot v. Lesatz et al.*, No. 2:19-cv-14, Plaintiff claims that, on December 4, 2018, Defendant Warden Lesatz came to his cell, threatened to take action unless Plaintiff stopped his lawsuits, called in Officers Beauchamp, Pesola, Holma, and Cayo, and forced Plaintiff to the showers. They then took razors that had been used by other prisoners to shave Plaintiff. When he objected, they beat him, and Defendant Pesola pushed a razor up Plaintiff's anus.

In *Theriot v. Lesatz et al.*, No. 2:19-cv-15, Plaintiff alleges that, on December 5, 2018, Warden Lesatz brought Officers Jurum, Gagnon, Reddinger, and Giles to the unit. When Plaintiff refused to drop all of his lawsuits, Lesatz allegedly ordered the team into Plaintiff's cell. Jurum took out a plastic bag containing a bloody syringe. After sticking Plaintiff in the hand with the needle, Jurum allegedly pulled Plaintiff's pants down and pushed the syringe handle up Plaintiff's anus.

In *Theriot v. Hill et al.*, No. 2:19-cv-16, Plaintiff alleges that, on December 6, 2018, he had a seizure and Officer Pollard called healthcare. Healthcare providers Hill and Jeffries responded and directed Pollard and Antilla to take him to healthcare. Plaintiff was taken on a gurney to healthcare. Plaintiff alleges, however, that, once he arrived in healthcare, Hill told him that she was not going to help him and that the transport had been done for the cameras. Plaintiff

claims that Hill and Jeffries left laughing and that Antilla, Pollard, and Hemmila subsequently took turns raping Plaintiff.

In *Theriot v. Huhta et al.*, No. 2:19-cv-17, Plaintiff alleges that, on December 8, 2018, he passed out. He awoke to find that Officers Hemmila, Huhta, Pesola, Holma, and Antilla were taking turns raping him.

In *Theriot v. Huhta et al.*, No. 2:19-cv-18, Plaintiff alleges that, on December 9, 2018, the same five officials threatened to rape him again, if not that day, then the next. When Plaintiff saw the group on the unit the following day, he purportedly had a panic attack, during which all five officers allegedly raped him again.

In *Theriot v. Lesatz*, No. 2:19-cv-19, Plaintiff alleges that, on December 12, 2018, Defendant Lesatz visited Plaintiff, telling him that they were going to find a way to stop him from filing lawsuits and grievances. When prisoners began to call out, telling Lesatz to leave Plaintiff alone, Lesatz allegedly called out that Plaintiff was not only a snitch, but also a child molester. That night, five prisoners jumped Plaintiff, punching and kicking him and calling him a rat.

In *Theriot v. Marshall et al.*, No. 2:19-cv-20, Plaintiff alleges that, on December 13, 2018, Deputy Warden Marshall, Assistant Deputy Warden Peterson, and Officers Cayo, Moss, and Ross opened Plaintiff's cell door and stuck a plunger handle up his anus.

In *Theriot v. Lesatz et al.*, No. 2:19-cv-24, Plaintiff alleges that, on December 17, 2018, Warden Lesatz and Deputy Warden Peterson brought officers Ross, Cayo, and Deforge to Plaintiff's cell. Officers Cayo and Ross held his feet while Deforge placed a pillow over Plaintiff's face and tried to smother him.

In *Theriot v. Lesatz et al.*, No. 2:19-cv-21, Plaintiff alleges that, on December 18, 2018, Warden Lesatz and Officers Huhta and Hemmila came to Plaintiff's cell, restrained him,

and took him to a filthy cell. There, Huhta told Plaintiff to strip for a search. While Plaintiff was bent over, Huhta stuck his index finger in Plaintiff's anus, causing all three officers to laugh.

In *Theriot v. Niemi et al.*, No. 2:19-cv-25, Plaintiff alleges that, on December 30, 2018, Officers Hemmila, Huhta, Pesola, and Kirchoffer entered his cell, held him down, and stripped him. Defendant Niemi then entered his cell and stuck a plunger handle up Plaintiff's anus. The other officers laughed.

In *Theriot v. Pertu et al.*, No. 2:19-cv-26, Plaintiff alleges that, on January 1, 2019, Officers Heinenen, Pesola, and Wickstrom, together with Lieutenant Wickstrom and Resident Unit Manager (RUM) Pertu, came to his cell in full riot gear. The officials, after describing their retaliatory motive, took Plaintiff to healthcare, where Lieutenant Wickstrom directed the others to repeatedly dunk Plaintiff's head into a bucket of water until Plaintiff agreed to stop writing lawsuits.

In *Theriot v. Huhta et al.*, No. 2:19-cv-27, Plaintiff alleges that, on January 7, 2019, officers Huhta, Baril, Mayo, Cordonado, and Menard came to his cell and coaxed him out. They restrained him and brought him to healthcare, where they waterboarded him for half an hour. They told him that Lesatz had ordered them to continue such actions for as long as he is at AMF.

In *Theriot v. Beauchamp et al.*, No. 2:19-cv-28, Plaintiff alleges that, on January 14, 2019, Officers Hemmila and Parish came to his cell and told him he had a visitor. Plaintiff refused to leave his cell. The officers left and returned with Officers Kirchoffer and Beauchamp, dressed in riot gear. They threatened Plaintiff if he did not come out. They then took him to healthcare, where RUM Tonequa was waiting. Tonequa described his intent to retaliate and then turned Plaintiff over to the other officers, who took turns anally raping Plaintiff before they stuck a broomstick up his anus.

In Plaintiff's February 2019 batch of seven cases, he claims that the assaults and sodomy continue.

In *Theriot v. Kirchoffer et al.*, 2:19-cv-56, Plaintiff alleges that, on January 15, 2019, corrections officers Kirchoffer, Wickstrom, Larson, Deforge, and Huhta brought Plaintiff to the roof where they beat him and then dangled him by his ankles over the edge of the building. They continued to hold Plaintiff over the edge until he agreed to stop filing lawsuits. He agreed; they pulled him back to the roof. As the officers walked Plaintiff back to his cell, they stopped and took turns sticking a pencil in Plaintiff's anus.

In *Theriot v. Lesatz et al.*, No. 2:19-cv-55, Plaintiff alleges that, on January 16, 2019, Warden Lesatz, Deputy Warden Marshall, and three officers, Stein, Basil, and Puri, took Plaintiff to the warden's office where the warden loaded one bullet into a revolver, spun the cylinder, put the barrel to Plaintiff's head, and pulled the trigger. Lesatz continued that practice as he threatened Plaintiff regarding lawsuits. Plaintiff agreed to stop "as the tears began to fall." (*Theriot v. Lesatz et al.*, No. 2:19-cv-55, Compl., ECF No. 1, PageID.3.) The Defendants took turns hitting Plaintiff in the face saying "No more lawsuits." (*Id*.) And then Defendant Marshall stuck the gun barrel into Plaintiff's anus.

In *Theriot v. Hoffman et al.*, No. 2:19-cv-58, Plaintiff alleges that on February 5, 2019, Administrative Assistant Hoffman and Officers Goodreva and Holma approached his cell to convey messages from Defendants Legislative Corrections Ombudsmen Olivia Ghislan and Keith Barber. They told Plaintiff that all of his lawsuits were a P.R. nightmare. They beat Plaintiff and stripped him and then shaved his legs, back, and buttocks with used razors that could transfer H.I.V. or any other disease.

In *Theriot v. Lesatz et al.*, 2:19-cv-57, Plaintiff alleges that on February 6, 2019, Warden Lesatz, Deputy Warden Marshall, and Residential Unit Manager Niemi came to Plaintiff's cell with a fourth man: former Michigan governor Rick Snyder. Governor Snyder told Plaintiff he was there on behalf of prosecuting attorney Joseph O'Leary. The warden had three cans of gas and sprayed all three cans into Plaintiff's cell. Plaintiff passed out. On February 17, 2019, five prisoners entered Plaintiff's cell and put a plastic bag on his head until he passed out. When Plaintiff woke up, there was a plunger handle in his anus. Later that day, Lesatz, Marshall, Niemi, and Snyder returned to convey that O'Leary wanted Plaintiff to stop filing lawsuits.

In *Theriot v. Mayo et al.*, No. 2:19-cv-59, Plaintiff alleges that on February 9, 2019, Grievance Coordinator Mayo came to Plaintiff's cell and told him he would have important visitors. An hour later Mayo returned with officers Lautentres and Dessellier. Plaintiff refused the visit. They gassed him, restrained him, and escorted him to the visit. On the way, they stuck a finger in his anus. The visitors were former Michigan representative Tim Greimel and Michigan Congressman Dan Kildee. Representative Kildee said, "I'm sort of a big deal. Do you know how many times I was on T.V. for the last couple of weeks?" (*Theriot v. Mayo et al.*, No. 2:19-cv-59, Compl., ECF No. 1, PageID.3.) Kildee then pulled out a syringe and injected Plaintiff with an unknown substance that made Plaintiff sick for five days.

In *Theriot v. Lesatz et al.*, No. 2:19-cv-54, Plaintiff alleges that, on February 15, 2019, Judge Janet T. Neff directed Warden Lesatz and officers Hemmila, Kutchie, and Bastian to drag Plaintiff into the shower, hang him with a noose, and stick their fingers in his anus in an effort to get Plaintiff to yield five complaints he was carrying. Plaintiff handed over the complaints.

In *Theriot v. Maloney et al.*, No. 2:19-cv-53, Plaintiff alleges that, on February 16, 2019, Judge Paul L. Maloney directed defendant corrections officers Marshall, Holma, Hemmila,

13

and Cordonado to take action against Plaintiff. The officers chained Plaintiff to a gun tower and ran a truck at him at high speed. He was offered the choice of discontinuing his litigious ways or being rammed by the truck. He agreed to quit and the truck was able to stop, but only a couple of feet away from Plaintiff. After the officers returned Plaintiff to his cell, Officer Hemmila stuck his finger in Plaintiff's anus.

Plaintiff's allegations, viewed collectively, are incredible. But credibility is further called into question by Plaintiff's new strategy of alleging a statement of retaliatory intent at the end of his complaints. In seven of the nine cases filed in January 2019, Plaintiff attributes an unlikely and specific statement to one officer, always a different one, declaring a retaliatory motive or threatening continued assaults unless Plaintiff stops bringing lawsuits. In the other two cases, Plaintiff includes a declaration by one of the officials to the effect that officers either enjoyed hurting Plaintiff or that he could die for all they cared. Similarly, in all seven of the cases filed in February 2019, Plaintiff alleges that officers made statements to the same effect.

Adding further to the appearance of fabrication, Plaintiff makes allegations about his medical symptoms in two cases that appear to have been copied directly from court opinions, to which Plaintiff directs the Court's attention. *See Theriot v. Lesatz et al.*, No. 2:19-cv-21 (describing the respiratory symptoms he experienced from a dirty and unventilated cell in nearly identical terms with *Gibbs v. Cross*, 160 F.3d 962, 964 (3d Cir. 1998)); *Theriot v. Huhta et al.*, No. 2:19-cv-18 (directly quoting *Caipaglini v. Saini*, 342 F.3d 328, 330 (7th Cir. 2003)), for symptoms of a panic attack). In this way, Plaintiff appears to have manufactured his allegations to correspond with cases he has found.

In sum, Plaintiff has now adapted the form of his complaints to avoid the three-strikes rule by routinely offering reasons why each scenario presents an imminent danger of serious

physical harm. First, by constant repetition, he suggests that the alleged actions of the many officers form a pattern that will continue. Second, he often broadly claims that Defendants denied him healthcare services after most of the alleged assault. Finally, he alleges that, at the end of most of the incidents, one of the perpetrators makes an explicit threat that the incidents will continue as long as Plaintiff continues his grievances and lawsuits or as long as he is housed at AMF.

Consistent with that pattern, Plaintiff alleges in the instant case that, on December 8, 2018, he had a terrible headache. As the afternoon progressed, he began to bleed from his nose, causing him to hit the emergency button in his cell. Plaintiff alleges that he blacked out, awaking to find that Defendant Officers Hemmila, Huhta, Pesola, Holma, and Antilla were taking turns raping him. Plaintiff claims that Defendant Huhta stated, "I couldn't resist." (Compl., ECF No. 1, PageID.3.)

Plaintiff claims that he is in imminent danger because Baraga officials will continue to torture him. His claim of imminent danger turns on the sheer number of cases in which he has alleged similarly egregious conduct by numerous officials, coupled with an unlikely declaration by an official about his or her future intent and a conclusory claim that he received no healthcare after the last event. Plaintiff's first argument – that allegations in the many cases form a pattern suggesting imminent danger – are simply not credible. Each case, considered alone, would be troubling, but it would not necessarily permit Plaintiff to overcome the imminent-danger hurdle that he must surmount as a filer of multiple prior meritless claims. Considered together, however, Plaintiff's claims are fantastic and border on delusional. As discussed, in his many cases, Plaintiff claims that a congressman, former governor, former state representative, warden, deputy wardens, and visitors from other facilities, sometimes daily, take turns assaulting him, sometimes with acts

15

of sodomy (with or without an object), waterboarding, or beating. At the end of each such event, a perpetrator issues an improbably-worded statement of his intent to retaliate and commit future assaults. Plaintiff's alleged pattern of abuse, formed by fantastic claims, will not suffice to establish imminent danger.

Moreover, Plaintiff's allegations regarding the predictions/promises/threats of future harm are also fantastic. Such allegations will not suffice to take Plaintiff's story of past harm and transform it into an imminent danger.

In short, Plaintiff has failed to plausibly allege an imminent danger of serious physical injury. Therefore, § 1915(g) prohibits Plaintiff from proceeding *in forma pauperis* in this action. Plaintiff has twenty-eight (28) days from the date of entry of this order to pay the entire civil action filing fee, which is $400.00. When Plaintiff pays his filing fee, the Court will screen his complaint as required by 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c). If Plaintiff does not pay the filing fee within the 28-day period, this case will be dismissed without prejudice, but Plaintiff will continue to be responsible for payment of the $400.00 filing fee.

Dated:   March 13, 2019                     /s/ Paul L. Maloney
                                                               Paul L. Maloney
                                                               United States District Judge

**SEND REMITTANCES TO THE FOLLOWING ADDRESS**:

Clerk, U.S. District Court
314 Federal Building
202 W. Washington Street
P.O. Box 698
Marquette, MI 49855

**All checks or other forms of payment shall be payable to "Clerk, U.S. District Court."**